# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY POOLAW, on behalf of )<br>D.P. (Minor Child), )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration,[1] )<br>  )<br>Defendant. ) | Case No. CIV-12-1343-F |

## REPORT AND RECOMMENDATION

Plaintiff Danny Poolaw brings this action on behalf of his minor daughter, D.P., pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application, based on D.P.'s alleged disability, for supplemental security income ("SSI") benefits under the Social Security Act. The Administrative Law Judge ("ALJ") who decided the case determined that D.P.'s impairments – including a congenital defect to her left hand resulting in no fingers or metacarpals and a non-functional thumb – did not meet, medically equal, or functionally equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). Having reviewed the record,[2] the transcript of

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration ("SSA") on February 14, 2013. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for the former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2] References to the administrative record, Doc. No. 11, are as "R. ___."

the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

D.P. was born on August 15, 2003. R. 26. Plaintiff protectively filed an application for SSI on September 12, 2008. *Id.* at 23, 151. Following preliminary administrative denials of the application, Plaintiff appeared and testified at a hearing before the ALJ on December 27, 2010. *Id.* at 42-62, 66, 73. The ALJ issued an unfavorable decision on September 22, 2011. *Id.* at 20-36. Plaintiff's request for review by the SSA Appeals Council was denied; thus, the decision of the ALJ is the final decision of the Commissioner. *Id.* at 1-5; *see* 20 C.F.R. § 416.1481.

On December 26, 2012, Plaintiff commenced this appeal. Pursuant to 28 U.S.C. § 636(b), United States District Judge Stephen P. Friot has referred the matter to the undersigned magistrate judge for hearing and recommendation. The Commissioner has answered and filed the administrative record, and the parties have briefed their positions. Thus, the matter is now ready for decision.

## THE ADMINISTRATIVE DECISION

The ALJ followed the three-step sequential evaluation process established by the SSA for determining whether minor children are disabled. *See* 20 C.F.R. § 416.924(a). At step one, the ALJ found that D.P. had not engaged in substantial gainful activity since the date the application was filed. R. 26. At step two, the ALJ found that D.P. has the

following severe impairments: "a defect in the left hand as she has no fingers and a thumb that is not functional" and "developmental delays." *Id.*

At step three, the ALJ found that D.P. did not have an impairment or combination of impairments that met or medically equaled one of the presumptively disabling impairments set forth in the Listings. *Id*. at 30. The ALJ then considered whether D.P. had an impairment or combination of impairments that functionally equaled any of the Listings. *Id*. at 30-36. Specifically, the ALJ evaluated D.P.'s ability to function in the six domains set forth in the regulations, and assessed her functioning as follows:

| Domain | Limitation |
|---|---|
| Acquiring and Using Information- | less than marked limitations |
| Attending and Completing Tasks- | less than marked limitations |
| Interacting and Relating with Others- | less than marked limitations |
| Moving About and Manipulating Objects- | marked limitations |
| Caring for Yourself- | less than marked limitations |
| Health and Physical Well-Being- | less than marked limitations |

*Id*. at 32-36; *see* 20 C.F.R. §§ 416.924(d), 416.926a.

Because functional equivalence for children requires a marked limitation in two or more domains or an extreme limitation in one domain, *see* 20 C.F.R. § 416.926a(a), the ALJ determined that D.P. did not have an impairment or combination of impairments that functionally equaled any of the Listings. R. 36. Based on his step-three conclusion, the ALJ found that D.P. was not disabled within the meaning of the Act. *Id*. Accordingly, Plaintiff's application for SSI was denied. *Id.*

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff contends that the ALJ's step-three determination is not supported by substantial evidence. Pl.'s Br., Doc. No. 13, at 3-9. *Id.* In conjunction with this argument, Plaintiff contends the ALJ's treatment of two evaluations of D.P. by state agency physicians was legally flawed. *Id.*

ANALYSIS

Plaintiff contends that, in addition to finding a marked limitation in the functional domain of Moving About and Manipulating Objects, the ALJ should have found a marked limitation in the domain of Acquiring and Using Information. *Id.* at 3-7. Specifically, Plaintiff argues that D.P. has suffered speech problems and developmental delays that have caused a marked limitation in the domain of Acquiring and Using Information. *Id.* Upon careful consideration of the record, the undersigned concludes that the ALJ's finding of a less than marked limitation in this domain is supported by substantial evidence.

The domain of Acquiring and Using Information involves the ability "to learn to read, write, do arithmetic, and understand and use new information." 20 C.F.R. § 416.926a(g)(1)(i). Pertinent to Plaintiff's focus on speech, this domain includes the ability "to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something." *Id.* § 416.926a(g)(1)(ii). For preschool children (ages 3 to 6), the Commissioner looks at a child's ability to "listen[] to stories, rhym[e] words, and match[] letters" as measurable skills necessary for learning to read. *Id.* § 416.926a(g)(2)(iii). Further, the Commissioner looks at a child's ability to "[use] words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories" as measurable skills involved in acquiring and sharing knowledge. *Id.*[3]

---

[3] For school-age children (ages 6 to 12), a child is expected to be able "to learn to read, write, and do math, and discuss history and science." 20 C.F. R. § 416.926a(g)(2)(iv). In

On October 4, 2008, Kelli Walling, D.P.'s kindergarten teacher, completed a questionnaire regarding D.P.'s functioning. *Id.* at 186-93. With respect to the domain of Acquiring and Using Information, Ms. Walling reported that D.P. had a *slight* problem "[u]nderstanding and participating in class discussions"; an *obvious* problem "[c]omprehending oral instructions," "[u]nderstanding school and content vocabulary," "[r]eading and comprehending written material," "[c]omprehending and doing math problems," "[p]roviding organized oral explanations and adequate descriptions," "[l]earning new material," "[r]ecalling and applying previously learned material," and "[a]pplying problem-solving skills in class discussions"; and a *serious* problem "[e]xpressing ideas in written form." *Id.* at 187.

On April 7, 2009, Ms. Walling completed another questionnaire. *Id.* at 219-26. With respect to the domain of Acquiring and Using Information, Ms. Walling reported that D.P. had a *slight* problem "[c]omprehending oral instructions," "[r]eading and comprehending written material," "[c]omprehending and doing math problems," and "[p]roviding organized oral explanations and adequate descriptions;" an *obvious* problem "[u]nderstanding and participating in class discussions," "[l]earning new material,"

---

terms of measurable skills, the Commissioner looks at a child's ability to: (a) "demonstrate [in an academic setting] what you have learned[,] e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions;" and (b) "use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change)." *Id.* As another metric, the Commissioner looks at a school-age child's ability "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others." *Id.*

"[r]ecalling and applying previously learned material," and "[a]pplying problem-solving skills in class discussions;" and a *very serious* problem "[e]xpressing ideas in written form." *Id.* at 220. As explanation, Ms. Walling stated: "[D.P.] doesn't have a left hand. Therefore, any activity that require[s] manipulating materials is extremely difficult for her. Writing is also very hard for her to do." *Id.*

To assess D.P.'s functioning in the domain of Acquiring and Using Information, the ALJ reviewed medical records, the teacher questionnaires, and evaluations by multiple medical professionals and a medical expert. On September 30, 2008, D.P. was examined by Heather Bonds, M.A., who administered a Battelle Developmental Inventory (2d ed.) and a Social Skills Rating System (teacher form). R. 208. Ms. Bonds reported, among other things, that D.P. "shows some difficulty with speech articulation and has a limited speaking vocabulary." *Id.* Ms. Bonds concluded that: "[D.P.] does not appear to have a significant delay within the cognitive or personal-social domains. She does have a delay within the adaptive domain, but this is due to her physical disability." *Id.* at 209.

On November 11, 2008, D.P. was examined by Abolghasem Rezaei, M.D., who reported, relevant to the domain of Acquiring and Using Information, subjective complaints that D.P. suffers from "slight development delays that are caused by inability to draw pictures or participate in learning activities that require fine motor skills," and "a slight speech impe[d]iment that is being treated with speech therapy." *Id.* at 323. With regard to speech, Dr. Rezaei reported complaints that: "She has difficulty with full pronunciation of all words in her vocabulary. Her parents are able to understand 100% of speech. It is difficult for other people that are non related and have not had a conversation with her to

7

fully understand her speech." *Id.* Dr. Rezaei, upon examining D.P., recorded an objective finding that D.P.'s "speech is 100% intelligible, and thought processes appear normal." *Id.* at 324. His assessment was: "[S]peech delay reported by the family, on the exam [patient] talking properly, age appropriate." *Id.* at 325.

On January 19, 2009, D.P. was examined by Leon Morris, Ed.D., who administered a Wechsler Preschool and Primary Scale of Intelligence (3d ed.) ("WPPSI-III"). *Id.* at 331-39. The WPPSI-III showed a full scale IQ of 94 with similar subscores, all of which were in the average range. *Id.* at 335. Dr. Morris observed that: "[D.P.'s] speech was spontaneous and 100% understandable. She did appear to exhibit a very subtle speech problem which was below the level indicated to diagnose a phonological disorder." *Id.* at 333.

On February 17-18, 2009, Charles Delhotal, M.D. and Ron Smallwood, Ph.D., working together, completed a Childhood Disability Evaluation Form based on their review of D.P.'s medical records. *Id.* at 342-47. As part of their review, Drs. Delhotal and Smallwood also requested the input of a licensed speech pathologist, Zane LeCroix. *Id.* at 341. Drs. Delhotal and Smallwood assessed D.P. as having a marked limitation in the domain of Acquiring and Using Information, but their substantive analysis shows a qualified or contradictory assessment:

> WPPSI VIQ = 93, PIQ = 96, FSIQ = 94. Teacher reports some difficulty in this area but not severe. Speech was reviewed by Zane LeCroix, LSP on 2-10-09. He advises speech was never the concern here. TQ [Teacher Questionnaire] left some question regarding child's language ability, but at best they might give us a single marked impairment in domain 1. Even if her language did reach a level of marked impairment (which appears unlikely based on her current established cognitive abilities.) TQ indicates speech is understood by almost all persons.

8

*Id.* at 344, 347.

On June 10, 2009, a second Childhood Disability Evaluation Form was completed by David Bissell, M.D., and Dorothy Millican-Wynn, Ph.D. *Id.* at 354-59. Drs. Bissell and Millican-Wynn assessed D.P. as having a less than marked limitation in the domain of Acquiring and Using Information. *Id.* at 356. They noted: "Teacher reports some difficulty retaining information, slight delay compared with peers. WPPSI testing reveals scores in average range." *Id.*

At the hearing, medical expert Dr. Harry Hauss testified that D.P. "has a mild speech defect," "[b]ut her family understands 100 percent of what she says." *Id.* at 49. Dr. Hauss agreed with the conclusion that D.P. had a marked limitation in the domain of Moving About and Manipulating Objects, and a less than marked limitation in the other domains, including Acquiring and Using Information. *Id.* at 51. Also at the hearing, D.P.'s mother and father testified that – among other things – D.P. could read by herself, write, and play on the computer. *Id.* at 55, 59-60.

Having carefully reviewed this evidence and the other evidence in the record, the undersigned cannot say that it was unreasonable, or contrary to the evidence, for the ALJ to conclude that D.P. had a less than marked limitation in the domain of Acquiring and Using Information. There is no dispute about D.P.'s IQ scores, which, as the ALJ notes, place D.P. in the average range of intelligence for her age. *Id.* at 32. Further, as correctly stated by the ALJ, all of the medical examiners observed that D.P.'s speech was completely understandable. *Id.* Only Dr. Morris observed a speech problem, which he described as "very subtle" and "below the level indicated to diagnose a phonological disorder." *Id.* at

9

333. The ALJ's conclusion was supported by substantial evidence in the record as a whole.

Plaintiff argues that the ALJ's decision suffers from an irreconcilable conflict because Drs. Delhotal and Smallwood assessed D.P. as having a marked limitation in the domain of Acquiring and Using Information, and, rather than expressly rejecting that opinion, the ALJ stated that this opinion, along with other medical opinions, was entitled to "great weight." Pl.'s Br. at 4; R. 31-32. Plaintiff is correct that, judging solely by the checked box, the assessment by Drs. Delhotal and Smallwood appears to be that D.P.'s limitation in the domain of Acquiring and Using Information is marked. *See* R. 344. Their substantive analysis, however, shows a different conclusion. Drs. Delhotal and Smallwood stated in that analysis that it was "unlikely" that D.P.'s functioning in this domain would reach the level of a marked impairment because of her "established cognitive abilities." *Id.* Drs. Delhotal and Smallwood do not cite any records or facts that would support a conclusion of a marked limitation in this domain—their only focus to that end was on the first teacher questionnaire completed by Ms. Walling, but even there the doctors stated that the questionnaire "indicates [D.P.'s] speech is understood by almost all persons." *Id.*

In *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012), the Tenth Circuit explained:

> Where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

*Id.* at 1166; *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Here, the ALJ, upon a full reading of the report by Drs. Delhotal and Smallwood, reasonably could have found their opinion to be substantively and substantially consistent with the remainder of the evidence. Moreover, given the ALJ's factual findings, and the other medical evaluations regarding whether D.P. has a marked limitation in the domain of Acquiring and Using Information, remand could not be expected to produce any different result. Under the standard that common sense, not technical perfection, should be the Court's guide, reversal on this issue is not appropriate.

Plaintiff next argues that, based on information provided by Ms. Walling in the teacher questionnaires, D.P. should have been found to have an extreme – rather than merely marked – impairment in the functional domain of Moving About and Manipulating Objects. Pl.'s Br. at 7-9. While Ms. Walling's ratings of D.P.'s limitations in this domain indicate the serious problems that one would expect given D.P.'s absence of a functional left hand, the ratings do not, even by themselves, evidence an extreme limitation. *Id.* at 190, 223. Regardless, the ALJ properly relied on the medical expert testimony and medical evaluations to assess D.P.'s limitations in the domain of Moving About and Manipulating Objects, none of which reflected a medical assessment of an extreme limitation. *See id.* at 48-52, 325, 345, 357. Because the ALJ's conclusion was supported by substantial evidence, reversal on this issue is not appropriate.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 12, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 26th day of February, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE